IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER JOHN MEYERS,** | ) | |
| Plaintiff, | ) | Civil Action No. 7:22cv00137 |
| | ) | |
| v. | ) | |
| | ) | |
| **WARDEN DANA** | ) | |
| **RATLIFFE-WALKER,** *et al.*, | ) | By: Robert S. Ballou |
| Defendants. | ) | United States District Judge |

## MEMORANDUM OPINION

Christopher John Meyers ("Meyers"), a Virginia inmate at Dillwyn Correctional Center ("Dillwyn"), proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants Warden Dana Ratliffe-Walker, ADA Coordinator Keith Kelly, and Shanice Johnson, manager for Keefe Commissary network,[1] violated his Eighth Amendment rights by delaying his receipt of noise-cancelling headphones and causing him mental anguish. Defendants filed motions to dismiss for failure to state a claim. Dkts. 40, 43. I find that Meyers fails to allege Defendants' actions were deliberately indifferent, and **GRANT** Defendants' motions to dismiss.

## I. BACKGROUND

The factual allegations are taken from Meyers's *pro se* complaint and are presumed to be true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Meyers asserts that in August 2020, Dr. M. Jackson-Woodley, a psychology associate at Dillwyn, recommended noise-cancelling headphones to reduce Meyers's mental health-related stress. Am. Compl., Dkt. 38 at 2. That same month, Meyers approached Kelly to obtain the headphones and was directed to request permission to purchase the headphones using a standard inmate request form. Id. at 3. He alleges

---

[1] Keefe Commissary Network is the sole provider of goods to the inmate population at Dillwyn. Am. Compl., Dkt. 38 at 1.

these instructions were contrary to Virginia Department of Corrections ("VDOC") operating procedures, "which Defendant Kelly should have known." Id. at 2-3.

Meyers states that on multiple occasions from August 2020 to August 2021, Kelly and Ratliffe-Walker insisted the approval for the noise-cancelling headphones rested with the VDOC ADA Coordinator in Richmond. Id. One year after the initial request, Meyers filed an informal complaint, to which Kelly responded that based on discussions with Dr. Jackson-Woodley, Kelly would approve noise-cancelling headphones for the "treatment of [Meyers's] condition." Id. at 3. Meyers submitted a commissary special order for the headphones, but asserts the order was mishandled and never processed for approval and purchase by Ratliffe-Walker or Johnson. Id. Meyers then submitted another informal complaint one month later, stating "a commissary special order for noise cancelling headphones was submitted and not responded to." Id. Johnson responded to Meyers's informal complaint, alleging the commissary special order was never received. Id. at 4. Meyers states that he submitted a second commissary order, which was hand-delivered to Ratliffe-Walker's secretary by Meyers's case counselor. Id.

Meyers submitted a "request for reasonable accommodation" based upon Operating Procedure 801.3, "Managing Offenders with Disabilities," which outlines that the ADA coordinator is responsible for reviewing and making a determination on all offender requests for a reasonable accommodation. Id. at 2, 4. Kelly approved this request in October 2021. Id. Meyers then submitted several informal complaints regarding the inaccessibility of the ADA Coordinator and the length of time it had taken to place his order. Id. at 4.  Kelly responded to these complaints, asserting "'due to covid' his movement was restricted between areas at the facility," but assured Meyers he had been approved for the requested items. Id. at 5. However,

2

Meyers alleges that over the next month, no further progress was made on "actually providing" the headphones. Id. at 5.

In December 2021, Meyers was called to the commissary window to sign the paperwork necessary to process the special order, and $28.00 was transferred from Meyers's "spend" account to his "reserve" account. Id. at 6. In the following months, Meyers discussed the status of the order with Ratliffe-Walker, who acknowledged the length of time it had taken to obtain the order was "totally extraordinary." Id. at 8. Finally, in April 2022, approximately 20 months after the initial recommendation for use, noise-cancelling headphones were delivered to Meyers by the property department. Id. at 8.

Meyers alleges Defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment and brings this suit under 42 U.S.C. § 1983.[2] Compl., Dkt. 1 at 2. He asserts "[t]he delay from August 2020 until April 21, 2022, in obtaining noise cancelling headphones prevented [him] from properly dealing with his mental health needs." Am. Compl., Dkt. 38 at 11. Further, Meyers alleges "the difficulty in completing the order added to [his] stress and anxiety levels." Id. In their motion to dismiss, Ratliffe-Walker and Kelly argue that Meyers fails to show that "his purported need for headphones was 'sufficiently serious,'" or that "Ratliffe-Walker or Kelly, 'knew of an excessive risk of harm[.]'" Dkt. 44 at 4-5. Johnson argues that Meyers did not allege that she "had any knowledge of his purportedly serious medical need, much less that she disregarded the same." Dkt. 41 at 4.

---

[2] Meyers's original complaint requested delivery of the noise-cancelling headphones. Dkt. 1 at 2. However, they have since been provided. Am. Compl., Dkt. 38 at 8.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). I accept all factual allegations in the complaint as true and draw all reasonable inferences in Meyers's favor as the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions, however, are not entitled to the same presumption of truth. Ashcroft, 556 U.S. at 678; Twombly, 550 U.S. at 556 (noting that while detailed factual allegations are not required, a plaintiff must still provide more than labels, conclusions, or a "formulaic recitation of the elements of the cause of action").

In *pro se* cases, federal courts construe pleadings liberally. Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) (finding a "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues."). However, "'a pro se plaintiff still must allege facts that state a cause of action.'" Scarborough v. Frederick Cty. Sch. Bd., 517 F. Supp. 3d 569, 575 (W.D. Va. 2021) (quoting Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

### B. Analysis

To state a claim for medical indifference under § 1983, Meyers must establish that Defendants, acting under the color of state law, deprived him of rights, privileges, or immunities

4

guaranteed by the Constitution or laws of the United States. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and "[i]t is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). A prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 239 U.S. 97, 102 (1976) (internal quotation marks and citations omitted). A claim of deliberate indifference has two components: an objective prong and a subjective prong. Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019). "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." Heyer v. United States Bureau of Prisons, 849 F.3d 202, 209-10 (4th Cir. 2017).

The objective prong "requires plaintiffs to demonstrate that the deprivation alleged was, objectively, sufficiently serious." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotation marks omitted). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted).

The subjective prong requires plaintiffs to show that prison officials acted with deliberate indifference. Scinto, 841 F.3d at 225. "[A] defendant acts with deliberate indifference if he had actual knowledge of the [plaintiff's] serious medical needs and the related risks, but nevertheless disregarded them." Gordon, 937 F.3d at 357 (internal quotation marks omitted). See also Jackson

5

v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (noting that deliberate indifference requires a showing that a prison official "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction"). "A plaintiff meets the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence that a prison official knew of a substantial risk from the very fact that the risk was obvious." Scinto, 841 F.3d at 226 (internal quotation marks omitted).

When a deliberate indifference claim is grounded in a delay in medical care, "[a]n Eighth Amendment violation only occurs . . . if the delay results in some substantial harm to the patient," such as "'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008); Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018); Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). Non-medical prison officials can generally rely on medical staff to determine the appropriate course of treatment. See Miltier v. Beorn, 896 F.2d 848, 854 (4th. Cir. 1990), overruled in part on other grounds by Farmer v. Brennan, 511 U.S. 825, 854 (1994).

Meyers alleges the approximately 20-month delay in the delivery of the headphones "prevented [him] from properly dealing with his mental health needs" and added to his overall stress and anxiety levels. Am. Compl., Dkt. 38 at 11. He asserts Dr. Jackson-Woodley recommended, and thought Meyers would benefit from, the use of noise-cancelling headphones in order to reduce anxiety and stress. Id. Under the Eighth Amendment, "[c]ourts treat an inmate's mental health claims just as seriously as any physical health claims." DePaola v.

Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir. 1977)). [3] At the motion to dismiss stage, I find that Meyers has alleged sufficient facts that he suffered from a serious medical condition diagnosed by a physician as mandating treatment, and thus, has satisfied the objective prong of the deliberate indifference inquiry.

However, Meyers is unable to satisfy the subjective prong of the deliberate indifference inquiry. He fails to allege facts that show Defendants were aware of a substantial risk that would occur from the delay of the headphones or that the delay caused severe pain or a marked exacerbation of his mental health condition. See Sharpe, 621 F. App'x at 734. As it relates to Johnson, Meyers alleges that Johnson transferred funds from Meyers's account and "on multiple occasions . . . falsely claimed to the plaintiff and multiple other prison staff members . . . that the order for noise cancelling headphones had been placed." Am. Compl., Dkt. 38 at 10. Regarding Ratliffe-Walker, Meyers alleges she is responsible for the delay in approval of the headphones, failures to comply with VDOC operating procedures, and "for the failures of her employee, Defendant Kelly[.]" Id. at 1, 9. Finally, concerning Kelly, Meyers asserts that, as ADA coordinator, Kelly is directly responsible for the "unnecessary" delay in granting Meyers's reasonable accommodation request. Id. at 9. Meyers further alleges that both Kelly and Ratliffe-Walker "acknowledged, throughout the process, that the noise cancelling headphones were medically necessary." Id. at 10.

Meyers states he could not properly deal with his mental health needs but does not assert any facts as to how the delay in the delivery prevented this. Even in his complaints and grievances, Meyers did not inform Defendants of any serious mental or emotional harm that the delay had caused or was likely to cause him. See Am. Compl., Dkt. 38. Furthermore, because

---

[3] While Walker-Ratfliffe and Kelly relied on several cases in their motion to dismiss to define what a "sufficiently serious" medical need is, the cases involve only physical ailments and do not address mental health diagnoses. See Dkt. 44 at 4–5.

Meyers was under the care of a psychology associate and no Defendants had medical or mental health expertise, Defendants could lawfully rely on the doctor's professional judgment in deciding how to safely accommodate the potential harms Meyers's mental illness posed. See Miltier, 896 F.2d at 854.

As it specifically relates to a delay in treatment, Meyers has not asserted any claims that the delay by Defendants in treatment exacerbated his injury or unnecessarily prolonged his serious pain. See Sharpe, 621 F. App'x at 734. Meyers alleges that his stress and anxiety levels increased due to trouble completing the order, but he does not allege any facts to establish when or if Defendants became aware of his condition. I recognize the variety of symptoms that individuals with mental health diagnoses experience. However, Meyers's allegations pale in comparison to the instances in which courts have found substantial harm, such as "where . . . a prisoner engaged in self-harm, expressed suicidal ideation, or experienced severe mental health symptoms during the period of delay." Riddick v. Trent, No. 7:20cv00447, 2023 WL 2137544, at *7 (W.D. Va. Feb. 21, 2023) (Cullen, J.). Meyers fails to allege facts that show the delay of noise-cancelling headphones resulted in substantial harm to his mental health, and therefore, he cannot recover under §1983. See Webb, 281 F. App'x at 166. Accordingly, I find no basis for concluding any delay in his treatment exacerbated his injury or unnecessarily prolonged serious pain.

### III. CONCLUSION

Meyers has failed to plead sufficient facts to establish that Ratliffe-Walker, Kelly, and Johnson were deliberately indifferent. Accordingly, I **GRANT** Defendants' motions to dismiss **WITHOUT PREJUDICE**. Plaintiff shall be given 21 days from the date of this order to file an amended complaint should he choose to do so.

8

A separate order will follow.

Entered: July 28, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge